CASE 45—ACTION BY GUS G. COULTER AGAINST JOHN S. SWEENEY TO
RECOVER POSSESSION OF THE BOOKS AND PAPERS OF THE OFFICE OF
STATE AUDITOR, AND TO HAVE THE DEFENDANT DECLARED AN
USURPER—OCT. 31.

# Sweeney v. Coulter; Burke v. McChesney; Day v. Hager; Powers v. Hill, and Throckmorton v. Nall: (All five cases tried together.)

109 295
112  21
j112  45
j112  49
e112  56
e112  58
^112  64

APPEAL FROM FRANKLIN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL.  AFFIRMED.

APPEAL AND ERROR—RIGHT OF APPELLANTS TO DISMISS WITHOUT PREJ-
UDICE—VALIDITY OF ELECTION LAW—VACANCIES IN STATE BOARD
OF ELECTION COMMISSIONERS—FORFEITURE OF OFFICE—DISQUALI-
FICATION OF ELECTION COMMISSIONER—DUE PROCESS OF LAW.

Held:   1. Under Civil Code Practice, section 741, providing that "the
appellee may file an authenticated copy of the record in the
clerk's office of the court of appeals with the same effect as if

296　　　　KENTUCKY REPORTS.　　　[Vol. 109

Sweeney v. Coulter; Burke v. McChesney; Day v. Hager; Powers v. Hill, and Throckmorton v. Nail.

filed by the appellant," the appellant will not be permitted, after the appellee has filed the transcript, to dismiss his appeal without prejudice.

2. The election law of 1898 is not unconstitutional.

3. As the statute provides that vacancies in the State board of election commissioners may be filled by the remaining member or members, where two of the three members of the board resigned the remaining member had power to fill one of the vacancies, and he and his appointee were then authorized to fill the other.

4. Even if a State election commissioner be a State officer within the meaning of Constitution, section 197, providing that any State officer who shall accept a free railroad pass shall forfeit his office, he can not be deprived of his office on that ground until he has been adjudged guilty by a court of competent jurisdiction in an appropriate proceeding for that purpose.

5. The fact that members of the State board of election commissioners had formed and expressed an opinion as to the merits of a contest of which they had jurisdiction, or were prejudiced against the one party or the other, does not render their judgment void; their decision that they were not disqualified to act being final in the absence of any provision in the statute for an appeal from their judgment.

6. As the election law does not violate the State Constitution, and due notice was given to the contestee, and he appeared before the contest board, and objected that certain members of the board were disqualified to act, there was due process of law.

JUDGES GUFFY, BURNAM, AND DURELLE DISSENTING.

T. L. EDELEN, W. H. YOST, AND W. O. BRADLEY, ATTORNEYS FOR APPELLANTS.

On appellant's motion to dismiss without prejudice:

1. The rule of this court requires a ten days' notice, which was not given, and this was suggested to the court as being sufficient to destroy the efficacy of the motion.

2. The petitions in the Coulter and McChesney cases are both fatally defective—neither contains an allegation that the plaintiff had executed bond as required by law.

3. The motion to dismiss is made in good faith. The only reason for dismissing was and is that the appellants were divided as to whether or not it should be prosecuted, and as they had two years in which to prosecute it, any way, it was thought best to dismiss it until unity of action could be obtained.

4. The only right the appellee has to file a record in this court is that he may file it with the same effect, as if filed by appellant.

Sweeney v. Coulter; Burke v. McChesney; Day v. Hager; Powers v. Hill, and Throckmorton v. Nall.

Civil Code, section 741. He can not, therefore, deprive the appellant of his right to dismiss the appeal by filing the record.

5 Where the appeal is dismissed without prejudice, the basis for the court's action is removed. Where the appeal is prayed without supersedeas the motion to dismiss can not be made by appellee.

6. No injury can result to appellees by the dismissal. They are secured by bond and all obstacles to the enforcement of the judgment are removed.

7. As to the motion to dismiss as a delay case, the rule established by this court clearly gives appellants the right to file the record at a fixed period by the code. 3 Litt., cited by appellee; Maxwell v. Bryan, 10 S. W., 279; Sawyers v. Langford, 5 Bush., 539; 4 Litt., cited by appellee; 46 Wis. No authorities cited except those by appellee.

T. L. EDELEN, ATTORNEY· FOR APPELLANTS, ON MOTION OF APPELLEES TO AFFIRM AS A DELAY AND TO DISMISS WITHOUT PREJUDICE MADE BY APPELLANTS:

1. In two of the cases, Sweeney v. Coulter, and Burke v. McChesney, you will find that the petition fails to state that the plaintiffs have executed the bond required by the statute.

2. In all these cases there is involved a question, whether a State board of election commissioners had jurisdiction to adjudicate to titles to the contestants when two-thirds of the members were disqualified by having formed and expressed an opinion in favor of one litigant and adverse to the other.

3. No effect can be attributed to the filing of the transcript here by the appellee different to that resulting where the appellant had filed it himself.

4. Your Honors will find running through the authorities of this court without variableness, that an appeal granted by the court below, and that prayed and presented in this court, are two separate and distinct appeals, the former of which may be dismissed voluntarily or against the will of the appellant without in any wise affecting his right to an appeal prayed and prosecuted here. Cobb v. Waggoner, 17 B. M., 562; City of Bowling Green v. Elrod, 14 Bush., 216; Hoover, Owens & Reutschler Mfg. Co. v. Mason & Foard Co. in the Lyon Circuit Court; Mrs. Summers v. Sundry Defendants in the Scott Circuit Court. These principles being firmly established in the jurisprudence of this State, I rely with the utmost confidence upon the right of appellees to dismiss their appeals with prejudice. So confident do I feel that Your Honors will reach the same conclusion, that I decline to discuss the cases upon their merits.

Sweeney v. Coulter; Burke v. McChesney; Day v. Hager; Powers v. Hill, and Throckmorton v. Nall.

JAMES ANDREW SCOTT, ATTORNEY FOR APPELLEES.

1. If there was any doubt as to the purpose of the appellants in prosecuting this appeal for delay only, that doubt would be removed by the following statement which appears upon the second page of appellant's brief herein:

"The only reason for dismissing the appeal was and is, that the appellants were divided as to whether or not it should be prosecuted and as they had two years in which to prosecute it, any way, it was thought best to dismiss it until unity of action could be obtained."

2. The appellants decline to argue the case on the merits and rely upon their right to dismiss.

3. They make the point that the auditor has not executed bond as required by law. It may be fairly said that by holding on to the office and claiming title to it, a usurping officer might make it an exceedingly difficult matter for the incoming auditor to execute a bond. The statute is merely directory.

4. All the questions that could have been raised have been settled by the contest board created by the legislature, and there is no appeal from its decision.

5. Appellants can not dismiss without prejudice. Appellees would necessarily be prejudiced, as their title would thereby be rendered uncertain for two years. Cooley's Const. Lim., 223; Batman v. Megowan, 1 Met., 533; Stine v. Berry, 96 Ky., 63; Newcum v. Kirtley, B. M., 517; Baxter v. Brooks, 29 Ark., 182; Grisel v. Harlow, 15 Ohio Stat., 114; Sterns v. Wyoming, 53 Ohio Stat., 352; Reynolds v. Ouchita, 11 So. Rep., 236; Wilson v. N. C., 169 U. S., 586; Purnell v. Mann, 20 Ky. Law Rep., 1150; Clark v. Mc-Kinzie, 71 Bush., 524; Atchison Co. v. Lucas, 83 Ky., 452; Clark v. Rodgers, 81 Ky., 43; Lafferty v. Huffman, 99 Ky., 80-120; State v. Judge, 13 L. A., 89; Martin v. Mopp, 12 Wheaton, 19.

On the ...... day of ................. 1900, the appellants filed a motion before the Court of Appeals to dismiss their appeal without prejudice, to which the appellees objected and filed response.

POINTS AND AUTHORITIES BY ATTORNEYS FOR APPELLEES ON SAID MOTION, JAS. ANDREW SCOTT AND JOHN K. HENDRICK.

1. The right to dismiss an appeal without prejudice at any time is not absolute and is within the sound discretion of the court, and will only be exercised by the court when it appears that the interests of the opposing party will not be prejudiced thereby.

2. If this proposition is supported by reason and authority, then appellant's motion should be overruled, as it needs no argument to

prove, that to sustain it would not only prejudice the rights of
the appellees, but would work great injury and confusion to the
State and general public, whose servants they are.   Civil Code,
sections 741, 371, 759.

3. Under section 741 of the Civil Code the appellees in these cases
had made at their own expense, which was considerable, copies
of the record, and duly filed them with the clerk of this court,
and after giving notice thereof, to which the appellants by their
attorneys appeared, the appellees moved the court to affirm the
judgments as delay cases under section 759 of the code.   Penn v.
Penn, 7 Law Rep., 515.

4. While ordinarily it may be true that a party has a right to dis-
miss a suit without prejudice, a suit is not technically an appeal.
At any rate it is a different proposition to dismiss your oppo-
nent's appeal.   3 Litt., p. 8; 5 Bush., 339; 8 Bush., 164; Max-
well v. Bryan, 10 S. W., 279; Raglan v. Wickware, 4 J. J. Mar-
shall, 530; State of Iowa v. Moriarty, 20 Iowa, 595; Yale Gov-
ernor, &c. v. Outlaw, &c., 14 Ark., 164; Monogahela & Co. v. Blair,
20 Pa. Stat., 71 and 79; Merrell v. Deming, 24 Minn., 179; Whit-
ney v. Cook, 99 U. S.; Shannon v. Barnwell, 4 Martin La., 35;
Louchine v. Strouse, 46 Wis., 497.

OPINION OF THE COURT BY JUDGE PAYNTER—AFFIRMING.

At the November election, 1899, the appellee, Coulter,
and the appellant, Sweeney, were opposing candidates for
the office of auditor of this Commonwealth.   The State
board of election commissioners issued to the appellant,
Sweeney, the certificate of election, and therefore the ap-
pellee, Coulter, contested his right to the office before that
board, the law conferring upon it the authority to try the
contest.   This board heard the contest, and adjudged that
the appellant had not, but that the appellee had, been
elected to that office, and duly entered its judgment in
accordance with its finding.   The appellant continuing to
occupy the rooms in the executive building where the du
ties of the office of auditor are performed, and refusing
to surrender it, this action was instituted to enforce the
judgment of the board of election commissioners, and have

the appellant declared a usurper, and that the books and papers of the office be turned over to the appellee. The court below adjudged that this should be done, and from that judgment the appellant prayed an appeal in that court, which was granted, and then executed a supersedeas bond. The appellee thereupon filed a transcript of the record here and afterward moved to affirm the case as a delay case. Pending that motion the appellant moved to dismiss his appeal without prejudice. Objections were made to these motions. The motions were made in May of the present year, but were not then disposed of. On September 17th the appellee entered a motion to advance and submit and have it affirmed as a delay case. The appellant again entered his motion to dismiss his appeal without prejudice. The case was set for oral argument for October 6th, and, not having been argued, was submitted on the motions and on the merits with ten days leave to brief.

The first question presented is as to the right of the appellant to dismiss his appeal without prejudice. Our Code of Practice provides that a plaintiff in an action may dismiss it without prejudice, but this court has repeatedly held that this can not be done where it results to the prejudice of some one interested in its prosecution. Numerous cases might be cited on this question. The only two reported cases cited by counsel for appellant are Cobb v. Waggoner, 17 B. Mon., 562, and City of Bowling Green v. Elrod, 14 Bush, 216, which substantially hold that, where an appeal is granted in the court below, and is dismissed because the appellant fails to file the transcript within the time prescribed by law, he is not thereby barred from having the appeal granted by the clerk of this court. The rule announced is correct. Where the court has permitted

the appellant to dismiss his appeal which he prayed in the court below, or where the court has done so, he can again take his appeal within two years from the rendition of the judgment. That, however, is not the question involved on the motion to dismiss on this appeal. Neither does the motion here involve the same question as would be involved where the plaintiff in the court below sought to obtain a judgment against the defendant, and then elected, before trial, to dismiss his action without prejudice. In the latter case the defendant has acquired no right to insist that the plaintiff shall proceed in his action to try his right to recover a judgment against him. In this case the appellee had recovered a judgment against the appellant. The relief which was sought in the court below had been granted, and, with the view of suspending the execution of the judgment, a *supersedeas* bond was executed and *supersedeas* issued. The purpose of the appeal is to have this court adjudge that the lower court erred in rendering the judgment complained of. The appellant seeks to have that judgment reversed, and obtained a *surersedeas* bond with the view of preventing its enforcement until the question could be adjudged. While he could have waited two years before prosecuting his appeal if he had not executed a *supersedeas* bond, he elected to prosecute it at once, and superseded the judgment. When the enforcement of the judgment was suspended by the *supersedeas*, the appellee became interested at once in a speedy determination of the appeal. If the appeal was prosecuted for delay merely, the appellee was entitled to have it affirmed as a delay case. Section 741, Civil Code Practice, reads as follows: "The appellee may file an authenticated copy of the rec-

ord in the clerk's office of the court of appeals with the same effect as if filed by the appellant." The intention of the legislature was to give the appellee the right to thus file a transcript, that the appeal might be speedily terminated. Therefore, when the transcript is so filed, the effect is the same "as if filed by the appellant." So we have a judgment superseded, and an appeal prosecuted therefrom and pending in court, where the appellee exercises his right in filing a transcript of the record. He has paid the cost of the transcript. When everything has been done to bring the errors complained of before this court for review, and the defendant has been damaged by the *supersedeas*, and been forced to make an expenditure for the transcript of the record, why should the appellant be permitted to dismiss his appeal where the court has jurisdiction of it, and everything has been done that is essential to bring it before this court? There is no provision of law to regulate the matter of dismissing appeals by the appellant without prejudice; neither is there any rule of this court which attempts to regulate it. Therefore the question arises, what are the rights of the parties in the light of the facts of this case? The appellee would be greatly prejudiced by having the enforcement of the judgment suspended, but the appellant is not in the slightest degree prejudiced by not being allowed to dismiss his appeal, because the steps taken by the appellant and by the appellee collectively complete the steps necessary to have the issue tried by this court. In the absence of a statute or a rule of this court regulating the matter, the court should not permit the appeal to be dismissed. In any case, to allow the appeal to be dismissed under the condition of the record in this case,

would be to prejudice the defendant, and trifling with the court, and especially in this character of case, where the public interest demands as speedy settlement of it as can be done consistent with the law and rules of the court.

We are not aware that the precise question here involved has ever been adjudged by this court. In State v. Moriarty, 20 Iowa. 595, it appeared that the appeal had been prosecuted by the State, and the attorney general asked that the appeal be dismissed. It did not appear that the appellee would be prejudiced by the dismissal of the appeal, and in referring to the right of the appellant to dismiss his appeal, the court said: "This is the right of the State as well as of any other appellant, unless it appears that the appellee will be injured or prejudiced thereby. Such prejudice or injury is not shown in this case, and the appeal is therefore dismissed, at appellant's cost." In Merrill v. Dearing, 24 Minn., 179, it appeared that the appellee moved to affirm the judgment under some rule of the court. In opposition to the motion the appellant presented a notice which had been executed upon the appellee that the appeal was or would be dismissed, and in passing upon these motions the court said: "There is no statute or rule of court controlling the practice in relation to the dismissal or withdrawal of appeals to this court. Where there is no such statute or rule of court, we think that, if an appellate court has once got jurisdiction of a cause, it can not be deprived of that jurisdiction, and the respondent of a decision, at the mere will of the appellant." In Whitney v. Cook, 99 U. S., 607, (25 L. Ed., 446), there was a motion under the rule of the court to affirm the judgment, and which rule also author-ized to be united with a motion to affirm a motion to

dismiss. The court said: "This implies that there shall appear on the record at least some color of right to a dismissal. That is not pretended in this case. We are therefore compelled to deny the motion. Our experience teaches that the only way to discourage frivolous appeals and writs of error is by the use of our power to award damages, and we think this a proper case in which to say that hereafter more attention will be given to that subject, and the rule enforced both according to its letter and spirit. Parties should not be subjected to the delay of proceedings for review in this court without reasonable cause, and our power to make compensation to some extent for the loss occasioned by an unwarranted delay ought not to be overlooked." In Shannon v. Barnwell, 4 Mart. (La.) 35, it appeared that the plaintiff in the judgment moved to affirm with damages, and the defendant moved to dismiss his appeal, and it was said: "The court ought not in any case to permit the appellant to dismiss his appeal, where it appears evident that such an act on his part will do an injury to the appellee by depriving him of a right which can only be maintained and enforced by the appellate court. We have on several occasions dismissed appeals, which operates an affirmance of the judgment in the inferior courts so far as to authorize executions on them. But this has never been done when it did appear clearly that the appeal was taken for the sake of delay only. The difficulty is to ascertain this truth where a full statement does not accompany the record. Yet, if it is not attempted to be done, the provisions of the twelfth section of this act cited may in every instance be defeated by the appellant, who chooses to delay, not praying his appeal until after the time prescribed by law

for making a statement of facts.   This circumstance, which
occurs in the present case, together with the presump-
tive correctness which attaches to every judgment of com-
petent tribunals until the contrary is shown, is, in our
opinion, sufficient to authorize the court to give force and
efficacy to the law by affirming the judgment with dam-
ages.   It is therefore ordered, adjudged, and decreed that
the judgment of the district court be affirmed, with five
per centum on the amount for damages, for the delay
caused by the appeal."   When the legislature gave an
appellee the right to file an authenticated copy of the rec-
ord in the clerk's office of the court of appeals with the
same effect as if filed by the appellant, it did not intend
to do an idle thing.   It was the intention to confer upon him
the right to have the court review the judgment from which
the appeal was granted.   If he did not secure that right
by filing the transcript, he certainly would be authorized
by law to do a meaningless thing.   We are of the opinion
that, in a case where the transcript is thus filed by the
appellee, it was the intention of the legislature that he
should have the right to have the judgment reviewed.   In
our opinion, in any case where an appeal has been pros-
ecuted, whether the appellee has filed the record under
section 741, Civil Code Practice, or not, the court obtains
jurisdiction of the appeal, and should decide whether the
appellant should be permitted to dismiss it.   In cases
when the appellant has filed a transcript of the record,
it would be prejudicial to the rights of the appellee to
have the appeal dismissed, and the court should retain
its jurisdiction, and dispose of the case on appeal.

It is urged that the election law enacted in 1898 is un-

constitutional.    As this court recently passed upon that question in Purnell v. Mann, 48 S. W., 407, and gave its reasons for holding it constitutional, we will not again discuss it.

It is also urged that the vacancies in the State board of election commissioners could only be filled by appointees of the Governor.  The vacancies resulted from the resignation of Pryor and Ellis, leaving Poyntz alone as a member of the board.  The act expressly provides that the remaining member or members are authorized to fill vacancies.  Poyntz proceeded to do so by the appointment of Fulton, and he and Fulton selected Yonts as the third member of the board.  The Governor appointed Cochran and Mackoy.  The question was directly presented to this court in a suit between the appointees of the Governor and those of Poyntz as to who had the authority to fill the vacancies, and this court, in Poyntz v. Shackelford, 54 S. W., 855, decided that Poyntz had the right under the law to appoint Fulton, and he and Fulton to appoint Yonts.

It is averred in the answer that Poyntz had accepted a pass on the Chesapeake & Ohio Railroad, and had, by reason thereof, forfeited his office as a member of the State board of election commissioners, by virtue of section 197 of the Constitution, which reads as follows: "No railroad, steamboat or other common carrier, under heavy penalty to be fixed by the General Assembly, shall give a free pass or passes, or shall, at reduced rates not common to the public, sell tickets for transportation to any State, district, city, town or county officer, or member of the General Assembly, or judge; and any State, district, city, town or county officer, or member of the General Assembly,

or judge, who shall accept or use a free pass or passes, or shall receive or use tickets or transportation at reduced rates not common to the public, shall forfeit his office. It shall be the duty of the General Assembly to enact laws to enforce the provisions of this section." Without going into a discussion as to whether an election commissioner is one of the officers prohibited by that section of the Constitution from accepting a pass from a railroad company, it is sufficient to say that he could not be deprived of the office unless he had been adjudged guilty by a court of competent jurisdiction in an appropriate proceeding for that purpose. An interesting discussion of a kindred question is found in Com. v. Jones, 10 Bush, 725.

The appellant sought to impeach the judgment of the State board of election commissioners by averring that Poyntz, before the appointment of Fulton, and while he was a member of the board, on *ex parte* affidavits, refused to sign the certificate issued to the appellant, and rendered a dissenting opinion, in which he held that the appellant had not been elected, and that the appellee was entitled to the certificate; that he thereafter and notoriously stated on numerous occasions that the appellant was not entitled to the office of auditor; that Fulton, prior to his appointment, published in the newspapers an article signed by himself, in which he stated that the vote of Louisville should be excluded on account of the alleged military interference; that they had expressed their opinions, and were prejudiced against the appellant, and were partial to the appellee; and that an affidavit setting forth the foregoing facts was filed before the board before it proceeded to hear the contest, which was then pending before it. Under the law as it existed before 1898, the Gov-

ernor and certain State officers constituted a contest board. In their stead the act of 1898 created a State board of election commissioners to hear contests in lieu of the Governor and his associates. The law did not make any provision for a member of the old board to vacate his place, nor does the act of 1898 make any provision for a member of the present board to vacate his place. There was no appeal provided from the decision of the old board under the old law, nor is there any appeal provided from the decision of the State board of election commissioners under the present law. The judgment of the Governor and his associates would have been final and conclusive in any contest which they heard, and so is the judgment of the State board of election commissioners final and conclusive. It has been the policy of the State to provide this method of contesting the election of State officers other than that of Governor and Lieutenant Governor, with the view of summarily disposing of contested election cases. If Poyntz and Fulton had declined to act, the only way that others could have taken their places would have been for them to have resigned. Poyntz was a member of the State board of election commissioners when he expressed his views in a dissenting opinion. Whether his opinion was a correct exposition of the law or was erroneous, he was entitled to have and to express it. If he had formed an opinion in passing upon the question as to whether the appellant was entitled to his certificate, certainly it did not disqualify him from continuing to act as a member of the board when it was organized into a contest board, as the law provides it should do. When the board was thus organized, he was required by law to take an oath before entering upon the discharge of his du-

ties, and give true judgment thereon according to the evidence. We have never understood, where this court passes upon a question, and a member of it dissents from the views of the majority, that he would be disqualified from sitting in a case involving precisely the same question. The fact that Poyntz may have had, an opinion, and expressed it, on the showing made before the State board of election commissioners when they had assembled to determine to whom the certificate of election should be awarded, did not disqualify him from hearing both sides of the question of the controversy in the contest proceeding instituted before the board, and rendering a judgment on it. It does not appear upon what facts Fulton expressed his opinion in the newspaper article,—whether it was upon what he had seen stated in the newspapers, or by talking to witnesses who claimed to be familiar with the conduct of the election in Louisville. Therefore it does not appear whether he expressed an opinion upon the law in the event a certain state of facts existed, or that he assumed to know the facts by information given him by witnesses, and from which he thus formed his opinion. Under our system a juror is not disqualified from sitting in a criminal case, although he may have formed and expressed an opinion based upon newspaper reports or rumors in the country. The members of the State board of election commissioners were necessarily the judges as to whether they were disqualified from trying the contest, as there is no other tribunal to which the question could be submitted; and they, in their wisdom and sense of fairness, had to determine whether or not they were disqualified from acting in the case. They had no personal interest in the proceeding. We have a statute in the State which authorizes a litigant to make

Sweeney v. Coulter; Burke v. McChesney; Day v. Hager; Powers **v.**
Hill, and Throckmorton v. Nall.

an affidavit against a judge presiding in his case, and in which he must state the grounds of his belief that the judge will not afford him a fair and impartial trial. The judge before whom that affidavit is filed must necessarily determine whether he is disqualified from sitting in the case, but that opinion is rendered subject to review by this court. This court does not adjudge, although the opinion of the trial court was erroneous, that the judgment is void, but it simply reverses the case, when, in its opinion, the judge has erred in passing upon the question as to whether he was disqualified from sitting in the case. In this case there is no appeal from the decision of the contest board in determining whether its members are disqualified from sitting in a given case. If the mere filing of affidavits, stating that the members of the contest board had formed and expressed an opinion in the case, would disqualify them from sitting, then all that a contestee would have to do would be to file his affidavit against two of the members of the board, and thus stop the contest, or force the members to resign, and the appointment of a new board. In our opinion, the facts averred do not show that the judgment of the State board of election commissioners is void. This court can not review their action in the case, because the law does not provide any appeal from its judgment.

It is urged that the hearing which was given the appellant did not afford him due process of law, as required by the Federal Constitution. The tribunal which tried the contest was created by a law not in conflict with the Constitution of the State. Due notice was given to the appellant by the appellee that he would contest his right to hold the office of auditor before that tribunal. From

the answer it appears that the appellant appeared before the board, and raised objection to Poyntz and Fulton acting as members of the contest board. A judgment was duly rendered. The constitutional objection urged by the appellant that he was not afforded due process of law is answered by a mere statement of the facts. It results that the motion to dismiss the appeal must be overruled, and the judgment affirmed.

Judges Guffy, Burnam and DuRelle dissenting.